UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMERA WILLIAMS                          CIVIL ACTION

VERSUS                                   NO: 09-6440

ROBERT J. CROWE, SHERIFF OF              SECTION: R
WASHINGTON PARISH and DEPUTY STEVEN
PINAC

**ORDER AND REASONS**

In this civil rights action, defendants Robert Crowe,
Sheriff of Washington Parish, and Deputy Steven Pinac move for
partial summary judgment on plaintiff's 42 U.S.C. § 1983 claims
and state law defamation claims.  For the following reasons, the
Court grants defendants' motion as to plaintiff's Section 1983
claims.  The Court declines to exercise supplemental jurisdiction
over plaintiff's state law defamation claims and dismisses the
state law claims without prejudice.

I.    **BACKGROUND**

Plaintiff Tamera Williams was hired by the Washington Parish
Sheriff's Office ("WPSO") in July 2008 as a correctional
officer.[1]  In June 2009, Williams brought a grill to the jail for
the inmates to repair.[2]  When Warden Topps arrived at the jail

---

[1]  R. Doc. 26-2 at 1 (Williams Aff.).

[2]  *Id.* at 2.

that day, he saw inmates cooking on the grill.[3]  Warden Topps called Williams regarding the inmates cooking on her grill.[4] Both defendant Steven Pinac and correctional officer Sandra Levi were present at the time of the phone conversation between Williams and Warden Topps.[5]  According to Pinac, after Williams hung up the phone, she threatened to kill Warden Topps.[6]  Pinac reported the incident to the Warden.[7]  Soon after, Williams was fired from her position with the WPSO.[8]

    After she was fired, Williams asserts that she sent a letter to Sheriff Crowe asking for a hearing to clear her name, but that she received no response.[9]  Further, Williams asserts that after she was fired from the WPSO for allegedly threatening to kill the Warden, she was unable to get another job in law enforcement in Louisiana.[10]  After several months, Williams was hired for a position in Mississippi.[11]

---

[3]  R. Doc. 26-8 at 9 (Topps Dep.).

[4]  *Id.*

[5]  R. Doc. 26-9 at 6 (Pinac Dep.).

[6]  *Id.* at 5.

[7]  *Id.* at 7-10.

[8]  R. Doc. 26-2 at 2 (Williams Aff.).

[9]  *Id.* at 3.

[10]  *Id.*

[11]  *Id.*

On September 21, 2009, Williams sued Sheriff Crowe and Deputy Pinac for deprivation of liberty and violation of due process, and state law defamation.[12]

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

---

[12]  R. Doc. 1.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

4

III. ANALYSIS

    A.  Section 1983 Claims

        *1. Official and Individual Capacity*

Plaintiff has sued Sheriff Crowe, Sheriff of WPSO, and Deputy Steven Pinac.  First, the Court must examine the allegations in the complaint to determine the nature of the plaintiff's cause of action.  *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973).  When the complaint is not clear whether the defendant is named in his individual or official capacity, the Court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued.  *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (finding course of proceedings indicated that defendant was sued solely in his official capacity because plaintiff never challenged defendant's assertion in his motion to dismiss that he was sued in his official capacity); *Forside v. Miss. State Univ.*, No. 101-438, 2002 WL 31992181, at *5 n.2 (N.D. Miss. Dec. 30, 2002) ("While some circuits require rigid pleading requirements to specify individual or official capacity in section 1983 suits ... the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings.").

In this case, plaintiff names Sheriff Crowe as a defendant "in his official capacity, ... Sheriff of Washington Parish,

State of Louisiana, a political subdivision of the State of Louisiana."[13]  The Court finds it clear from the face of the complaint that the claims against Sheriff Crowe are only in his official capacity.

As to Deputy Steven Pinac, however, the plaintiff does not specify the capacity in which he is sued.  The case caption names as a defendant "Deputy Steven Pinac," suggesting the suit is against Pinac in his official capacity.  But, in contrast to the specificity with which the plaintiff asserted her claims against Sheriff Crowe in his official capacity, in naming Pinac as a defendant, she asserts: "Further made defendant herein is Deputy Steven Pinac, a person of the full age of majority and a resident and domiciliary of the Parish Washington, State of Louisiana."[14] *Cf. McKenzie v. City of Columbia*, No. 94-60833, 1995 WL 534889, at *4 (5th Cir. 1995) (naming the capacity in which one defendant is sued and not others is a relevant consideration, but is not conclusive that the other defendants are sued in the alternative capacity, and the Court should resolve the uncertainty by examining the whole proceedings).

Because it is not clear from the complaint in which capacity Pinac is sued, the Court looks to the substance of the claims, the relief sought, and the course of proceedings.  First,

---

[13]  R. Doc. 1 at 1.

[14]  *Id.*

although Pinac did not raise the issue of qualified immunity under Section 1983 in his brief, Pinac did raise qualified immunity as a defense in his answer.  Qualified immunity under Section 1983 is available only to defendants sued in their individual capacities. *Matherne v. Wilson*, 851 F.2d 752, 759 (5th Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)). Thus, Pinac's assertion of the defense indicates that he interpreted plaintiff's action as being against him personally. Second, plaintiff does not allege that Pinac acted in accordance with a governmental policy or custom, further suggesting the claim against Pinac is in his individual capacity.  *See, e.g., Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) (finding an individual capacity claim when "the unconstitutional conduct alleged involves [the defendant's] individual actions and nowhere alludes to an official policy or custom").  Third, plaintiff seeks punitive damages, which are not available in official capacity suits.  *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 379 (5th Cir. 2010) (allowing plaintiff's amended complaint naming sheriff in his individual capacity to relate back to her original complaint because, among other reasons, plaintiff's original complaint naming sheriff in his official capacity sought punitive damages, which are typically unavailable in official capacity suits).  Finally, the Court notes that plaintiff's request for reinstatement, a remedy available only against a

7

defendant in his official capacity, refers only to Sheriff Crowe, and not Pinac.[15]  *See Hill*, 924 F.2d at 1374 (finding an individual capacity suit was intended where plaintiff sought injunctive relief because injunctive relief may be recovered only in an official capacity suit).  Based on the allegations in the complaint, the remedies sought and the course of proceedings, the Court finds that plaintiff asserts claims against Pinac in his individual capacity.

### 2. *Property Interest*

Williams asserts that when she was fired from her position as a correctional officer at WPSO, she was deprived of a property interest in her public employment.  A public employee has a property interest in her continued employment only if entitlement to a property interest exists by reason of statute, express contract, or implied contract.  *King v. Newton Cnty. Bd. of Supervisors*, 144 F. App'x 381, 384 (5th Cir. 2005).  Under Louisiana law, an employment contract is considered terminable at will unless it is to last for a readily ascertainable period. *Overman v. Fluor Constructors, Inc.*, 797 F.2d 217, 218-19 (5th Cir. 1986).  Here, plaintiff testified that when she was hired,

---

[15]  *Id.* at 4.

8

she was not promised employment for any specific period of time.[16] Plaintiff admits that she understood she was an at-will employee and could be terminated at any time.[17]  In addition, Warden Topps testified that all WPSO deputies were at-will employees.[18] Because plaintiff was an at-will employee, she had no property interest in her employment.  *King*, 144 F. App'x at 384 (affirming district court's grant of summary judgment on Section 1983 claim because plaintiff was an at-will employee with no property interest in her employment).  Therefore, the Court grants defendants' motion for summary judgment on plaintiff's due process claim based on deprivation of a property interest.

### 3. Liberty Interest

Even absent a constitutionally protected property interest, a governmental employee may have a protected liberty interest in freedom from stigmatization.  A public employee's liberty interest is implicated, and the right to notice and an opportunity to clear one's name arises, when the employee is "discharged in a manner that creates a false and defamatory impression about [her] and thus stigmatizes [her] and forecloses [her] from other employment opportunities."  *Bledsoe v. City of*

---

[16]  R. Doc. 22-4 at 9 (Williams Dep.).

[17]  *Id.*

[18]  R. Doc. 26-8 at 42 (Topps Dep.).

9

*Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)).  To prove a violation of one's liberty interest based on the denial of a name-clearing hearing, the plaintiff must meet the "stigma-plus infringement test."  *Id.*  The Fifth Circuit requires the employee to prove: (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) no meaningful public hearing was conducted pre-discharge; (5) the charges were made public; (6) the employee requested a hearing to clear her name; and (7) the request was denied.  *Id.*

### (a) Individual Capacity Claim Against Pinac

As discussed earlier, the Court finds that Williams' Section 1983 claim is asserted against Pinac in his individual capacity. Thus, to survive summary judgment, plaintiff must create a genuine issue as to each of the elements for the denial of a name-clearing hearing relating to Pinac's actions individually. Specifically,

> [p]laintiff bears the burden at trial of proving that Defendant [Pinac] violated her procedural due process rights by being *personally* responsible for discharging her while *he* made false and stigmatizing charges in public against her in connection with the discharge and then *personally* refused to provide her with notice or an opportunity to be heard after she asked *him* for a hearing to clear her name.

10

*McKay v. Dall. Indep. Sch. Dist.*, No. 06-2325, 2009 WL 530578, at
*4 (N.D. Tex. Mar. 3, 2009) (emphasis in original) (granting
defendant's motion for summary judgment on individual capacity
claim based on denial of a name-clearing hearing when plaintiff
presented no evidence that she requested a name-clearing hearing
from the defendant sued in his individual capacity).

In this case, plaintiff has provided no evidence to rebut
Pinac's testimony that he had no authority to fire Williams and
was not personally involved in the decision to fire her.[19]   In
addition, Williams has provided no evidence that she requested a
name-clearing hearing from Pinac.   Instead, the evidence shows
that Williams requested a name-clearing hearing only from Sheriff
Crowe.[20]   Accordingly, the Court grants defendants' motion for
summary judgment on plaintiff's § 1983 claim against Pinac in his
individual capacity.

### (b) Official Capacity Claim Against Sheriff Crowe

#### (i) Constitutional Violation

Claims against Sheriff Crowe in his official capacity are
treated as claims against the municipal entity he represents.
*See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-

---

[19]   R. Doc. 26-9 at 26 (Pinac Dep.).

[20]   R. Doc. 26-2 at 3 (Williams Aff.); R. Doc. 26-13 (Letter
to Crowe).

capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' [and] [a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). To establish municipal liability, plaintiff must first set forth evidence of an underlying constitutional violation. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (imposition of municipal liability first requires a determination that plaintiff's harm was caused by a constitutional violation).

Defendant has moved for summary judgment on the grounds that plaintiff cannot establish that stigmatizing charges were made against her and made public. As evidence that stigmatizing charges were made against her and that the charges were made public, plaintiff submits several affidavits from former and current residents of Washington Parish. Some of the evidence submitted by plaintiff to establish that stigmatizing charges were made public involves multiple layers hearsay for which no exception has been proffered, and thus is not competent summary judgment evidence.[21] *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (hearsay evidence is inadmissible for summary judgment

---

[21] *See, e.g.,* R. Doc. 26-6 (Smith Aff.) (indicating that Smith's mother told Smith that she heard a Washington Parish Sheriff Deputy say that Williams threatened to kill the warden).

purposes).  The only evidence plaintiff offers as evidence that stigmatizing charges were made public that warrants discussion is the affidavit of Shawn Hall.  Shawn Hall attests that while at a bar in Bogalusa, Hall heard a deputy from WPSO, "whose name [he] can't recall," tell his friends that Williams had threatened to shoot the Warden.[22]

Under Rule 56(e), affidavits must be made on personal knowledge, shall set forth facts admissible in evidence, and "show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e).  "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge."  *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007); *see also Official Comm. of Unsecured Creditors v. Hendricks*, No. 04-66, 2008 WL 3007989, at *4 (S.D. Ohio Aug. 1, 2008) ("[A]n affiant's conclusory assertion that his or her statements are based on personal knowledge is insufficient; Fed. R. Civ. P. 56(e) requires that the affidavit 'show that the witness is competent to testify on the matters stated' ... includ[ing] demonstrating that the witness has personal knowledge as required by Fed. R. Evid. 602.").

The Court finds that the Hall affidavit fails to establish that Hall had personal knowledge that the declarant was in fact a WPSO deputy.  The affidavit does not identify the speaker.

---

[22]  R. Doc. 26-5 (Hall Aff.).

13

Further, the affidavit provides no facts from which it can be inferred that Hall had personal knowledge that at the time the statement was made, the declarant was currently employed by the WPSO.  For example, Hall's affidavit does not state that the declarant was in uniform, that the declarant said the incident regarding Williams occurred at work, or provide any other facts to allow an inference that Hall had personal knowledge that the unnamed declarant was a WPSO employee.  Because Hall's affidavit fails to include enough factual support to show that he had personal knowledge that the declarant was a WPSO employee, the Court finds the affidavit fails to create a material fact issue that WPSO employees made stigmatizing charges public regarding the plaintiff.  Further, because plaintiff points to no other competent summary judgment evidence to show that WPSO employees made stigmatizing charges public, the Court finds plaintiff has failed to establish an underlying constitutional violation.

### (ii) Policy or Custom

Even if the Court were to consider Hall's affidavit for purposes of establishing an underlying constitutional violation, the Court finds plaintiff has failed to create a material fact issue that stigmatizing charges were made public pursuant to an official policy, custom or manner otherwise fairly attributable to the municipality.  Before addressing the elements, the Court

14

notes that plaintiff did not even brief the issue of municipal liability under *Monnell* to support her Section 1983 official capacity claim.

Municipalities and other local government bodies may be liable under Section 1983, but only if three elements are proven: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a violation of a constitutional right caused by, or whose "moving force" is, the policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (("[A] policymaker, an official policy and the 'moving force' of the policy are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."). A municipality or other local government body cannot be liable for a Section 1983 violation under a theory of *respondeat superior*. *Id.* Rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or *imprimatur*; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* Generally, a plaintiff must show a pattern of similar violations; a single constitutional violation gives rise to municipal liability only when the single decision or act was undertaken by

15

a person with final policymaking authority. *Valle v. City of Hous.*, 613 F.3d 536, 542, 547 (5th Cir. 2010).

The Fifth Circuit defines an official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984).

The third prong of a municipal liability claim requires the plaintiff to show "moving force causation"; that is, a direct causal link between municipal action and deprivation of federal rights. *Valle*, 613 F.3d at 542 (citation omitted).

For a municipal liability claim based on the denial of a name clearing hearing, "to avoid summary judgment ... [plaintiff] must show that the governmental agency has made or is likely to make the stigmatizing charges public in any official or intentional manner." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 347 (5th Cir. 2006). In *Hughes v. City of Garland*, the plaintiff asserted a deprivation of liberty interest claim based on the city's failure to provide her with the opportunity to clear her name. 204 F.3d 223, 225 (5th Cir. 2000). In affirming the district court's grant of summary judgment based on a lack of public disclosure, the Fifth Circuit expressly rejected

plaintiff's claim that the relevant test was whether the city had

a policy or practice of failing to protect employee information,

without regard whether the person who released the information

had authority to act from the City.  *Id.* at 227.  Instead, the

Court held that "public disclosure must be fairly attributable to

the defendant employer."  *Id.* (citations omitted).  In rejecting

plaintiff's claim that statements made by city employees were

fairly attributable to the city, the Fifth Circuit held,

> [plaintiff] has shown nothing more than that some people in
> the community heard rumors about the events leading up to
> her discharge.  This casual gossip falls well short of
> "intentional or official" disclosure by the City.

*Id.* at 228; *see also Bellard v. Gautreaux*, No. 08-627, 2010 WL

3523051, at *6 (M.D. La. Sept. 3, 2010) (stating that for

purposes of plaintiff's official capacity claim against the

Sheriff, it was insufficient that plaintiff could show that an

employee of the Sheriff's Office publicized information regarding

plaintiff's termination); *Scott v. Cleveland City of Tex.*, No.

08774, 2010 WL 786013, at *11 (E.D. Tex. Mar. 1, 2010) (holding

that plaintiff's Section 1983 claim failed because plaintiff

pointed to no evidence that the city, through some official act

or policy, authorized the disclosure, or that there was a wide-

spread practice or custom of disclosing the information at

issue); *Nichols v. Univ. of S. Miss.*, 669 F. Supp. 2d 684, 697

(S.D. Miss. 2009) (rejecting plaintiff's argument that defendants

intentionally allowed the release of stigmatizing charges by

failing to advise an individual to keep the charges confidential because the employer was not under "the duty of rumor control").

The facts in this case are analogous to those before the Fifth Circuit in *Hughes*.  Like the plaintiff in *Hughes,* Williams has shown nothing more than that some members of the community heard rumors about the events leading up to her discharge.  This casual gossip falls well short of the "intentional or official" disclosure required to support an official capacity claim. Plaintiff has not shown that the WPSO had a policy of disclosing stigmatizing comments and concedes that she has no evidence that Sheriff Crowe, an official policymaker for the WPSO, ever made the reasons for her termination public.[23]  Plaintiff also fails to demonstrate a pattern of instances in which WPSO employees published stigmatizing comments to establish a widespread practice or custom.  Indeed, plaintiff's husband testified that the WPSO was trying to keep Williams' termination quiet:

> A: This has been kept quiet and hardly any deputies know that Tamera has been terminated.
> Q: Okay. Now when you say "this," were you referring to Tamera Williams' termination?
> A: Yeah; being her terminated.
> Q: Okay. And was it your opinion that news of Tamera Williams' termination had been kept private?
> A: It wasn't put out in public – like a news brief or anything
> ...
> Q: Is it your understanding that the – – the sheriff and other employees of the Washington Parish sheriff's office

---

[23]  R. Doc. 22-4 at 10 (Williams Dep.).

> had attempted to keep Mrs. Williams' termination fairly
> quiet? Or - -
> A: Did they attempt to do that?  Yes.  Yes, they did attempt
> to do that.[24]

Defendants actions in attempting to keep the plaintiff's
termination quiet show that there was neither a  policy, pattern
or practice of disclosing stigmatizing information about
employees to the public.

The Court holds that plaintiff has failed to create a
material fact issue that stigmatizing charges were disclosed by
any WPSO employee pursuant to an official policy or wide-spread
practice for purposes of municipal liability.


### (iii) Lack of Policy and Failure to Train

To the extent plaintiff attempts to assert municipal
liability based on the lack of a formal, written confidentiality
policy or specific training, her claim fails.  In order to prove
that municipal liability rests on an alleged inadequacy in
training or policy , plaintiff must show (1) the training or
policy of the municipality's policymaker was inadequate; (2) the
policymaker was deliberately indifferent in adopting the
inadequate training or policy; and (3) the inadequate training or
policy directly caused the plaintiff's injury.  *Benavides v.
Cnty. of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992) (citing *City*

---

[24]   R. Doc. 26-3 at 28-29 (J. Williams Dep.).

*of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).  To establish municipal liability based on the failure to train or the absence of a policy, plaintiff must show that the municipality acted with deliberate indifference by disregarding the obvious consequences of its actions. *Valle v. City of Hous.*, 613 F.3d 536, 542, 547 (5th Cir. 2010).  Deliberate indifference is a "stringent standard" requiring "more than negligence or even gross negligence."  *Id.* (citation omitted).  To meet the deliberate indifference prong, plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* (citing *Harris*, 489 U.S. 390).  The municipality is liable only when its failure to act "reflects a 'deliberate' or 'conscious' choice."  *Harris*, 489 U.S. at 389.

Plaintiff's brief does not even use the words "deliberate indifference," much less make a showing that the absence of a policy or training was the product of deliberate indifference. Plaintiff's bare assertion that WPSO has no formal policy or specialized training regarding confidentiality does not create a material fact issue as to municipal liability.  *See Benavides*, 955 F.2d at 973 ("[C]onclusory allegations of grossly inadequate training do not make out a case of a deliberately indifferent

policy.") (citations and internal quotations omitted).   As discussed above, plaintiff's husband testified that WPSO employees acted to keep news of plaintiff's termination quiet, showing that WPSO did not act with deliberate indifference.[25]

Not only does plaintiff fail to show that the lack of a policy or training constituted deliberate indifference, but plaintiff also fails to specify what policy or training should have been in place. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."). Because plaintiff has failed to define what the contents of any policy should have been, or what training should have been provided, plaintiff has made no showing that the lack of this policy or training was the moving force that caused her injury.

The Court holds that Williams has failed to provide any evidence that the reasons for her termination were disclosed to the public in accordance with an official policy or custom, or that a lack of formal policies and training constituted deliberate indifference or was the moving force that caused her injury.   Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's Section 1983 official capacity claim.

---

[25]   *Id.* at 29.

**B.  State Law Claims**

A district court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).  The Court has wide discretion to dismiss state law claims after dismissing all federal claims. *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999).  The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002) (quoting *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)).  This rule, however, "is neither mandatory nor absolute." *Smith*, 298 F.3d at 447.  In addition to the statutory provisions of section 1367(c), the Court must balance the factors of judicial economy, convenience, fairness and comity. *Id*. at 446.

Here, the Court has dismissed all federal claims.  Only state claims remain, and the Court has no independent basis for jurisdiction over them.  The Court has not yet addressed the

merits of the defamation claims, and as they exclusively involve issues of state law, principles of comity weigh in favor of allowing a Louisiana state court adjudicate them.  The Court therefore finds that the rule counseling against the exercise of supplemental jurisdiction over state-law claims when no federal claims remain applies in this case.  Accordingly, the Court dismisses the state law defamation claims without prejudice.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment, DISMISSES the federal claims WITH PREJUDICE and DISMISSES the state law claims WITHOUT PREJUDICE.

New Orleans, Louisiana, this 22nd day of February, 2011.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE